**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

UNITED STATES OF AMERICA                                              PLAINTIFF

V.                              CASE NO. 5:25-CR-50005-001 & -002

JASON BOYD CARNEY and
LACEY CHRISTINA CARNEY                                               DEFENDANTS

<u>OPINION AND ORDER</u>

Currently before the Court is Defendant Jason Boyd Carney's Motion for Relief Based on the Unlawful Piercing of the Attorney-Client Privilege (Doc. 106). Co-Defendant Lacey Christina Carney joins the Motion. *See* Doc. 120. The Government filed a Response in Opposition and supporting documents, which the Court also reviewed. *See* Doc. 138. For the reasons explained below, the Motion is **DENIED**.

## I.  BACKGROUND

On November 27, 2023, federal agents applied for a warrant authorizing a search of the Springdale residence owned by the Carneys in connection with an ongoing criminal investigation. *See* Doc. 1-1, Case No. 5:23-CM-00053. The Honorable Christy Comstock, Chief United States Magistrate Judge for the Western District of Arkansas, found probable cause to issue the warrant and approved the seizure of certain items, including the Carneys' electronic devices, financial and banking records, real estate records, titles to cars and boats, safes, and keys to deposit boxes. *See id.* Two days later, on November 29, agents executed the warrant, and by no later than that moment the Carneys were aware that they were the targets of a criminal investigation.

The same day that federal agents raided the Carneys' home, a federal grand jury sitting in the Western District of Arkansas issued a subpoena directed to the Carneys'

non-profit business, 2nd Milk, Inc., demanding the production of multiple categories of documents related to the ongoing criminal investigation, including corporate financial and personnel records, meeting minutes, policies, contracts, and corporate correspondence. *See* Doc. 3-2, Case No. 2:24-CM-00013. The subpoena was served on Mr. Carney (in his capacity as President of 2nd Milk) while his home was being searched. The subpoena specified that 2nd Milk's documents were to be returned to the grand jury by January 16, 2024. *See id.*

On December 1, 2023, two days after the execution of the search warrant, Mr. Carney received a text message ("December 1 text message") from the lawyer who was simultaneously representing the Carneys in their individual capacities *and 2nd Milk* in connection with the grand jury proceedings. For ease of reference, the Court will refer to this lawyer as "Attorney-1," as that is how he is identified in the Indictment. In the December 1 text message, Attorney-1 suggested to Mr. Carney that he move any large sums of money currently in his bank accounts to the attorney's trust account to avoid seizure by law enforcement. That advice proved to be prescient, as earlier that same day the Government had filed a civil forfeiture complaint seeking the seizure of the Carneys' home as proceeds of suspected criminal activity. *See* Doc. 2, Case No. 5:23-CV-5219.

On January 15, 2024—the day before 2nd Milk's document production was due—Attorney-1 filed a motion to quash the disclosure of 2nd Milk's donor lists and donation amounts and a motion to intervene and quash a third-party subpoena directed to 2nd Milk's tax preparer. *See* Docs. 1 & 2, Case No. 2:24-CM-00013. The Honorable Susan O. Hickey, United States District Judge for the Western District of Arkansas,[1] denied both

---

[1] At that time Judge Hickey served as the court's Chief Judge.

motions and instructed 2nd Milk to produce all documents by March 5, 2024. *See id.*,

Docs. 6 & 7. Attorney-1 appealed the Court's decision on March 6. In the meantime, 2nd

Milk produced some—but not all—of the documents responsive to the grand jury

subpoena, and the Government moved to compel the rest of the production. *See* Doc.

12. While the motion to compel was pending, the Eighth Circuit dismissed 2nd Milk's

appeal. *See* Doc. 14. By May 24, 2024, 2nd Milk had still not completed its document

production, so the Government moved for an emergency hearing on its motion to compel,

which Judge Hickey set for an in-person hearing on June 11, 2024.

Mr. Carney and Attorney-1 both appeared at the hearing on the motion to compel,

during which Judge Hickey observed that 2nd Milk had not yet produced all emails, text

messages, social media files, board minutes, foreign bank accounts, expense records,

and donor records responsive to the grand jury's subpoena. *See* Doc. 20, p. 6. By this

point the Carneys and Attorney-1 had the benefit of more than six months to review the

subpoenaed documents and to assert whatever objections as to privilege that they

deemed appropriate.   In fact, during the hearing—in response to a question by the

Government's counsel—Attorney-1 objected when reference was made to a March 2024

email (that 2nd Milk had already produced), claiming that it was an attorney-client

privileged communication. *See id.* at p. 19. Judge Hickey overruled the objection. *See id.*

Attorney-1 did not object to the production of the December 1 text, nor did the Carneys'

assert any other privilege objections during the hearing. Judge Hickey ultimately ruled

from the bench and granted the Government's motion to compel. *See id.* at pp. 53–54. In

a written order filed on June 12, 2024, she directed "2nd Milk to immediately produce all

items responsive to the subpoena at issue or SHOW CAUSE as to why 2nd Milk should not be held in contempt for continued noncompliance with the subpoena." (Doc. 18).

It appears that 2nd Milk completed its production on or about June 24, 2024, *see* Doc. 138, p. 2, Case No. 5:25-CR-50005, and the December 1 text message was among the materials produced that day. But the prosecutors did not have immediate access to the document production.  Instead, the Government had set up a filter team to review all subpoenaed documents for privilege before they were turned over to the prosecution team.

Once 2nd Milk's production was complete, the lead prosecutor, Assistant United States Attorney Hunter Bridges, emailed Attorney-1 on June 26, 2024, to ask whether any of the documents should be flagged for the filter team as possibly privileged. *See* Doc. 138-6. On June 27, Attorney-1 responded: "I don't know the extent of what all was included, but I would suspect that there are messages which 2nd Milk produced that may contain privilege material for various parties that have had their emails produced. I do not have authority from any party to waive any privileges." *Id.* AUSA Bridges immediately replied, "We can't fully gauge where we stand until we have a better handle on the privilege issue," and requested the names and email addresses or phone numbers that corresponded to any text messages or emails over which the Carneys were asserting privilege. *Id.*   Attorney-1 said, "Ok, let me see about getting phone numbers and addresses for you," but Attorney-1 (apparently) did not follow up as promised. *Id.*

On June 28, AUSA Bridges emailed Attorney-1 "looking for an update on [potentially privileged] [phone] numbers and [email] addresses or whether your clients (Lacey/Jason/2nd Milk) will waive privilege for items in this production." *Id.* In the same

4

email, AUSA Bridges referenced the Court's deadline and said he "was expecting [Attorney-1] to have some sort of answer on [privileged items] today . . . ." *Id.* Although the Court has not been provided copies of later communications between AUSA Bridges and Attorney-1 (if they exist), it seems undisputed that Attorney-1 never asserted privilege over the December 1 text message despite multiple opportunities and invitations to do so. Without the benefit of further guidance by Attorney-1, the filter team began reviewing 2nd Milk's production.

Fast forward about five months.  On December 13, 2024, prior to any Indictment, AUSA Seth Creed, who headed the filter team, presented an *ex parte* motion (Doc. 138-1) and brief in support (Doc. 138-2) to Judge Comstock (the same magistrate judge who made the probable cause determination to issue the search warrant for the Carney's home), asking that she decide whether the December 1 text message—to the extent it constituted a privileged communication—could nevertheless be disclosed to the prosecution team under the crime-fraud exception. Judge Comstock issued an *ex parte* Order (Doc. 138-4) finding that the crime-fraud exception applied and authorized the filter team to disclose the message to the prosecution team.

The Carneys were indicted on January 8, 2025, for conspiracy to commit wire fraud, wire fraud, and structuring transactions to evade reporting requirements. *See* Doc. 1. The Government filed a First Superseding Indictment on May 21, adding claims of filing false tax returns. *See* Doc. 53. Seven weeks ago on December 11, 2025, the Government filed a Second Superseding Indictment. *See* Doc. 84. After that, the Government served the Carneys' trial counsel with more discovery, and in that production were copies of the Government's *ex parte* motion and Judge Comstock's *ex parte* order concerning the

December 1 text message. The Carneys now assert the following arguments in support of their alternative claims for relief:

(1) because the December 1 text message was privileged, was disclosed to the grand jury, and was potentially relied upon by the grand jury in returning the Second Superseding Indictment, their Fifth Amendment rights were likely violated, and therefore all charges against them should be dismissed as a result;

(2) the Indictment should be dismissed because the Magistrate Judge was without authority to rule on the privilege issue, and further, was not permitted to engage in an *in camera* review and issue an *ex parte* order without giving Mr. Carney the opportunity to present his arguments in favor of privilege; and

(3) in the alternative, the December 1 text message should be suppressed from evidence at the trial because it was obtained in violation of the attorney-client privilege.

The Court will address each claim for relief in turn.

## II.  DISCUSSION

### A.  Dismissal of Indictment Due to Disclosure of Privileged Material

The Carneys' first argument is based on the naked assumption that the grand jury was presented with an attorney-client privileged communication. The Carneys do not offer any facts to support or explain their conclusion that the Government provided the December 1 text message to the grand jury.  However, according to AUSA Bridges, "[t]he grand jury never reviewed the [December 1 text message] that Judge Comstock allowed the filter team to release to the prosecution team,". (Doc. 138, pp. 4–5). The Carneys offer no rebuttal to the Government's representation.  On this record, it appears the premise of

the Carneys' argument is factually mistaken.   The Carneys' motion to dismiss the

Indictment on this basis is therefore denied. [2]

## B.  Alleged Magistrate Judge Errors

The Carneys' second contention—that the Magistrate Judge lacked the authority

to issue an order deciding whether the December 1 message was subject to the crime-

fraud exception is, in a word, puzzling.   Magistrate judges are authorized to make

probable cause determinations and rule on pretrial discovery motions under 28 U.S.C.

§ 636(b)(1)(A). The Carneys cite to no law that would suggest *only* an Article III judge

may rule on privilege issues raised by a filter team.

Moreover—and contrary to the assertions in their motion—the procedural

background outlined above establishes that the Carneys had ample opportunity to assert

privilege over the December 1 text message to an Article III judge but declined to do so.

First, Attorney-1 moved to quash portions of 2nd Milk's production—but not the December

1 text message specifically. And when Judge Hickey denied their motions, the Carneys

took an appeal to the Eighth Circuit—which was summarily dismissed.

When 2nd Milk failed to complete the production by Judge Hickey's deadline, the

Government was forced to file a motion to compel. Mr. Carney and Attorney-1 then

appeared before Judge Hickey for an emergency hearing. During the hearing Attorney-1

took the opportunity to raise a privilege objection to a different communication (which was

denied), but he did not assert privilege with respect to the December 1 text message.[3]

---

[2] If new information surfaces that the December 1 text message *was* presented to the Grand Jury, then the Carney's may renew their motion, and the Court will consider the merits of their argument in light of the new information.

[3] As the Government notes its brief, the December 1 text message was produced by 2nd Milk, not the Carneys, individually. (Doc. 138, p. 6).  This creates a separate question of

Finally, in the days following the emergency hearing, AUSA Bridges emailed Attorney-1 repeatedly to ask whether the Carneys intended to raise any new privilege claims—even though Attorney-1 had not provided a privilege log with the final document production, nor had he otherwise made an assertion of privilege. According to the evidence before the Court, Attorney-1 either failed to respond to AUSA Bridges's privilege inquiries or failed to give him a straight answer. Either way, given Attorney-1's silence, it is unsurprising that the Government's filter team chose to seek a definitive ruling on privilege from Judge Comstock. *Cf. United States v. Zolin*, 491 U.S. 554, 565 (1989) (holding that "no express provision of the Federal Rules of Evidence bars . . . *in camera* review" of "allegedly privileged communications to determine whether those communications fall within the crime-fraud exception"). The filter team certainly could have assumed that 2nd Milk had waived the privilege, given the circumstances outlined above—but it did not.

In summary, a magistrate judge did not preside over the Carneys' and 2nd Milk's Motions to Quash the Subpoenas—an Article III judge did.  A magistrate judge did not preside over the emergency hearing on the Government's Motion to Compel—an Article III judge did.  The Carneys were not deprived of an opportunity to challenge these rulings on appeal—in fact, the Eighth Circuit dismissed the appeal that they did file.  Even when the Carneys were finally forced to complete the document production, they ignored multiple additional invitations to assert privilege to the filter team.

---

waiver—which may, or may not, explain why Attorney 1 was not pressing the issue before Judge Hickey.

Here's what Chief Magistrate Judge Comstock did do. In a pre-indictment context, where a defendant is not yet a party and targets are not made privy to filings on the miscellaneous docket, she conducted what amounts to a probable cause determination as to whether the December 1 text message was subject to the crime-fraud exception. As explained in her order, Judge Comstock did so in accordance with established law. (Doc. 138-4, pp. 4-5). She explicitly considered the applicability of the crime-fraud exception to the December 1 text message in the context of the "Donor Check Communications" that occurred between November 28 and December 26, 2023. *Id*. The Carneys have been aware of this surrounding context since the filing of the initial Indictment (Doc. 1, ¶¶ 34-37), yet they conveniently omit it when arguing against the merits of Judge Comstock's ruling. (Doc. 106, pp. 4-6).

Against this lengthy procedural backdrop, the Carneys' suggestion that "the Government engineered a scenario where Carney—who holds the privilege—never had the opportunity to establish its applicability" (Doc. 106, p. 5) is demonstrably false and completely disingenuous. Even if the Carneys were correct about the merits of their privilege argument, they are wrong about the "highly prejudicial nature" of what followed. Based on the information presently before the Court, the Carneys have not suffered any prejudice because the December 1 text message was (apparently) not presented to the grand jury. Therefore, dismissal of the Indictment due to alleged magistrate judge error is denied.[4]

---

[4] To the extent the Carneys also seek this Court's review of Judge Comstock's pre-indictment ruling, the Court declines to do so at this time. The proper vehicle for such review would be a liminal motion, but as discussed in the next section, the Government does not presently intend to offer the December 1 text message into evidence at trial.

**C. Exclusion of December 1 Message at Trial Due to Attorney-Client Privilege**

The Carneys' final argument is that the December 1 text message should be excluded from trial as privileged. In response, the Government states that it does not intend to introduce the message at trial. *See* Doc. 138, p. 8 n.5. As the matter is currently moot, the Court declines to issue an advisory opinion on privilege. However, if circumstances change and the Government decides to offer the December 1 text message in its case-in-chief, it should provide reasonable notice to the Carneys such that they may seek liminal relief prior to trial.

For all these reasons, **IT IS ORDERED** that the Motion for Relief Based on the Unlawful Piercing of the Attorney-Client Privilege (Doc. 106) is **DENIED**.

**IT IS SO ORDERED** on this 27th day of January, 2026.

_____
TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE