IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                        CASE NO. 5:25-CR-50005-001 & -002

JASON BOYD CARNEY and
LACEY CHRISTINA CARNEY                                      DEFENDANTS

## OPINION AND ORDER

Before the Court are the Government's Seventh Motion in Limine to Admit Expert Testimony (Doc. 102) and Defendants' Motion in Limine to Exclude Expert Testimony (Doc. 104) concerning the Government's proposed witness Heather Larkin. For the reasons explained below, both Motions are **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

According to the Government, Ms. Larkin is an expert in the field of non-profit business requirements, including best practices,[1] policies, and procedures for non-profit financial oversight and management. She has served for the past eighteen years as President and CEO of a non-profit called the Arkansas Community Foundation, Inc., which, according to her CV (Doc. 102-2), is the largest grantmaker in the State in terms of numbers of grants awarded and does business with thousands of other non-profits each year. The Government seeks to qualify Ms. Larkin as an expert witness under

---

[1] These "best practices" include: common financial controls for non-profits, standard record-keeping requirements, the roles of accountants and bookkeepers in non-profit financial management, common conflicts of interest, the selection and training of board members, salary determinations, and budgeting and spending oversight. *See* Doc. 102-1, p. 4 (Expert Disclosure).

1

Federal Rule of Evidence 702 based on her specialized knowledge, skill, experience, and training regarding non-profits.

In the Government's view, Ms. Larkin's testimony will aid the jury in understanding non-profit management and governance, which will, in turn, help them assess whether the Carneys had the requisite intent to use 2nd Milk funds to commit fraud or were willfully blind to the fraudulent use of such funds. Ms. Larkin is expected to testify about her experience in running a large non-profit and opine that a well-functioning non-profit should maintain by-laws, codes of ethics, and conflict-of-interest policies subject to oversight and review; and that a non-profit's directors should review tax forms and supporting financial data before submitting them to the IRS. She also plans to explain to the jury how well-functioning non-profits go about setting executive salaries, instituting common financial controls, utilizing accountants and bookkeepers, and avoiding potential conflicts of interest. Finally, the Government expects Ms. Larkin will testify about non-profit formation requirements under state and federal law, including filing and auditing requirements, uses of revenue, and hiring and compensation. *See* Doc. 102-1, pp. 3–4. The Government insists that it will not go so far as to ask her "to opine on whether 2nd Milk breached any . . . duties [of care] or whether the Defendants committed any fraudulent acts." (Doc. 136, p. 3).

The Carneys view Ms. Larkin's expected testimony as irrelevant and unnecessary at best, and likely to confuse the jury or be unduly prejudicial at worst. Accordingly, their Motion in Limine (Doc. 104) asks the Court to exclude Ms. Larkin's testimony under Rules 402 and 403. They submit that their alleged failure to follow "best practices" in running 2nd Milk does not mean they are guilty of federal crimes; however, they fear the jury may

2

become confused about the import of Ms. Larkin's testimony and find them guilty simply because they did not satisfy Ms. Larkin's standards for appropriate non-profit governance. Furthermore, they object to Ms. Larkin instructing the jury on the contours of Arkansas non-profit law and offering legal opinions as to whether 2nd Milk was in compliance, as that testimony would invade the duty of the Court to instruct the jury on the relevant law.

## II. LEGAL STANDARDS

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. Under the Rule, proposed expert testimony must satisfy the following prerequisites: (1) the testimony must be based on scientific, technical, or specialized knowledge that is useful to the finder of fact in deciding the ultimate issue of fact; (2) the witness must be qualified to offer such testimony; and (3) the testimony must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it will provide the assistance that the finder of fact requires. *See Lauzon v. Senco Prods. Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 satisfies these prerequisites. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597–98 (1993). An expert's opinion should only be excluded if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Bonner v. ISP Techs.*, 259 F.3d 924, 929 (8th Cir. 2001).

According to the Advisory Committee's Note on Rule 702, it may be important in some cases "for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case" such as by "instruct[ing] the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying

to tie their testimony into the facts of the case." Such "generalized testimony" may help the factfinder "address a subject matter" the factfinder knows little about. *Id.* But by the same token, expert testimony is not always necessary: "Where the subject matter is within the knowledge or experience of lay people, expert testimony is superfluous." *Ellis v. Miller Oil Purchasing Co.*, 738 F.2d 269, 270 (8th Cir. 1984).

### III.   DISCUSSION

The Carneys do not dispute that Ms. Larkin is qualified to educate the jury on general principles of non-profit formation, governance, auditing, revenue, and hiring. Instead, they claim her testimony is not necessary in the first place. However, if the Court disagrees and is inclined to let her testify, the Carneys think it likely that she will attempt to offer ultimate conclusions as to their state of mind and opine as to their guilt. Further, they fear Ms. Larkin's "best practices" testimony will cause the jury to believe that if 2nd Milk's recordkeeping, financial controls, and personnel decisions fell below the standard of care (according to Ms. Larkin), the jury should find the Carneys guilty of fraud.

The Court has considered both sides' positions and finds Ms. Larkin qualified under Rule 702 to offer general testimony on the structure, governance, policies, fiduciary responsibilities, and management of non-profit entities, given her experience working with her own non-profit and many others. This testimony is likely to assist the jury in understanding facts that the average layperson would not know and that are integral to the pending charges of wire fraud, conspiracy to commit wire fraud, structuring transactions to evade reporting requirements, and tax fraud. Ms. Larkin's testimony in this regard will also provide helpful context to the jury as they assess the Carneys' respective roles in the non-profit as CEO and CFO.

4

Ms. Larkin will not be permitted to offer legal conclusions or opinions that apply corporate governance concepts to the case's specific facts. She is prohibited from opining as to whether either or both of the Carneys breached their fiduciary duties or broke the law. These guardrails will avoid both jury confusion and the possibility of unfair prejudice to the Carneys under Rule 403.

**IT IS THEREFORE ORDERED** that the Government's Seventh Motion in Limine (Doc. 102) and the Carneys' Motion in Limine to Exclude Testimony (Doc. 104) are both **GRANTED IN PART AND DENIED IN PART**, as stated above.

**IT IS SO ORDERED** on this 13th day of May, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

5